UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:13-CR-90 |
| | ) |
| RAY DWIGHT SLUSS | ) |

## **REPORT AND RECOMMENDATION**

Defendant is charged in a four-count indictment with offenses involving child pornography. That pornography was found on a laptop computer and two external hard drives in his home during a warrantless search by his state probation officer. Defendant has moved that the evidence be suppressed on the basis that the warrantless search violated his Fourth Amendment rights, Doc. 16. The motion has been referred to the magistrate judge for a report and recommendation. An evidentiary hearing was held on January 14, 2014.

With one exception, all relevant facts are undisputed.

On May 3, 2004, defendant was convicted in the criminal court for Washington County, Tennessee, on two counts of especially aggravated sexual exploitation of children. Judge Lynn Brown of that court sentenced defendant on count one to 354 days of incarceration, to be followed by 10 years of probation. On count two, Judge Brown sentenced defendant to 10 years of probation to be served consecutively to the probation term imposed on count one. Thus, defendant's effective sentence was 354 days of incarceration,

followed by a total of 20 years' probation.[1]

Contemporaneously with the judgment of conviction and sentence, Judge Brown signed and filed a "Probation Order" which contained various preprinted conditions of probation that applied to all probationers. Paragraph 10 of that order provided a space for the judge to impose any conditions special or unique to a particular probationer, in this case defendant. Paragraph 10 provided, among other things, that defendant was required to undergo sex offender treatment; that he was to have no computer or internet access; and that any computer could be checked by his probation officer or a law enforcement officer.[2]

As part of the special condition that he undergo sex offender treatment and mental health counseling, defendant was required to submit to periodic polygraph examinations; *see*, exhibit 3. The first polygraph examination was administered to him in July, 2004, shortly after he was sentenced. The results of that examination suggested "deception."[3]

On July 5, 2005, defendant was given a document entitled "Sex Offender Directives" which contained a list of activities in which defendant could not engage, as well as places he could not frequent.[4] As relevant to the issue now before this court, the second paragraph of that document provided that defendant was not allowed to use a computer to obtain access to the internet unless his probation officer granted pre-approval in writing; that he would not

---

[1] Exhibit 1.

[2] Exhibit 2.

[3] Exhibit 3, page 1.

[4] Exhibit 4.

2

use a computer for any sexually-oriented purpose; *and that he consented to the search of his computer and any software at any time by his probation officer.*

Three subsequent polygraph examinations, administered in February 2006, September 2006, and then in May 2007, indicated that defendant answered all questions truthfully.[5]

In September, 2010, over the objections of the state probation officer, Judge Brown converted defendant's probation to *unsupervised* probation.[6] However, that order specifically noted that all other conditions of probation remained in effect.

Every Halloween it is the custom and practice of both state and federal probation officers to conduct "home checks" of individuals under their supervision who have been convicted of offenses involving child sexual exploitation. On October 31, 2011, defendant was one of many convicted child sex offenders whose home was checked by probation officers. Due to the sheer volume of homes to be checked, law enforcement officers customarily assist with those home checks. Deputy Sheriff Denney assisted with the checks that evening, and defendant's home was his responsibility. During that home check, Denney saw that defendant had two laptop computers, both of which were running. For reasons which should be obvious, Deputy Denney was concerned enough that he called defendant's probation officer, who was then LeeAnn Crumley, and he told her about the two computers. Defendant was not prohibited from having computers, of course, but only from using them

---

[5] Exhibits 5, 6, and 7.

[6] Exhibit 8.

to access the internet. Therefore, Crumley noted the information but did nothing else.

In August, 2013, an unrelated federal investigation in Texas precipitated a string of events which ultimately resulted in the discovery of defendant's continuing receipt and possession of child pornography. In 2013, and perhaps earlier, the Federal Bureau of Investigation had been investigating the internet sale of a manual that purported to instruct the reader on how to fool a polygraph machine, *i.e.*, how to lie without detection by the machine. The F.B.I. became interested in the manual, and people who bought it, because of national security implications. Perhaps "national security" is over-used and abused by the government, but in this instance the concern was legitimate. Many government agencies and contractors administer polygraph examinations to people who occupy or may occupy highly-sensitive positions. Additionally, private companies who wish to safeguard their trade secrets and formulas use polygraph machines when breaches of security are suspected, or when they are contemplating hiring an individual who will have access to proprietary information. Lastly, but certainly just as importantly, probation officers use polygraph examinations as a tool in their supervision of convicted sexual predators.

The F.B.I. learned that defendant had ordered, paid for, and received this manual. Special Agent Brian O'Hare of the local office of the F.B.I. was given the task of talking to defendant about his purchase of the manual.

In August, 2013, Special Agent O'Hare spoke with defendant at his home. He promptly told defendant that he was not a suspect, that he had not committed a criminal offense, and that he was considered to be only a witness.

4

At this point, defendant essentially sealed his fate: he emphatically denied any knowledge of the manual, much less receiving it. Unfortunately for him, Special Agent O'Hare knew that to be a lie. O'Hare said little else and left his business card with defendant.

Subsequently, Agent O'Hare contacted F.B.I. agents in Texas to confirm what he had already been told, *viz.*, that the F.B.I. knew that defendant had ordered the manual, and that it had been delivered to him. Those agents advised that "Raymond Sluss" had ordered a manual; that it was paid for with a credit card; and that the manual had been delivered to Raymond Sluss at defendant's address.

At that point, knowing that defendant was on probation for child pornography, O'Hare contacted defendant's probation officer and told him that defendant had lied about ordering the manual.

Defendant's supervising Probation Officer was Michael Newland. Special Agent O'Hare asked Newland to accompany him to defendant's house so that Newland, on the authority of defendant's conditions of probation, could search defendant's computer for child pornography. In the course of their conversation, Probation Officer Newland told Agent O'Hare that he had a right to search defendant's computers regardless of any deception regarding the manual.

On August 20, Probation Officer Newland, Probation Officer Crumley, and Special Agent O'Hare went to defendant's house. Defendant again was asked about the manual and, as before, he denied any knowledge. Newland asked defendant about any computers in the

5

house, and defendant responded that there were two. He said that one computer belonged to his mother, which he used for business purposes, and that the other computer was broken. Defendant acknowledged to his probation officers that they had the right to search any computer in the house.

Officer Crumley recalled being told by Deputy Denney that he had seen two running computers in defendant's home during the Halloween home visit in October, 2011. She asked defendant about those two laptop computers, and defendant adamantly insisted that he had *never* had two laptops. Out of an abundance of caution, Officer Crumley contacted Deputy Denney, and asked him if he recalled the two laptop computers. Denney responded that he did, and he also confirmed that he had called her in October, 2011, to tell her about those two computers. Thus, defendant continued to dig himself into a deeper hole; he had lied to Special Agent O'Hare about ordering the manual, and he lied to Probation Officer Crumley about the two laptop computers.

On defendant's desk, the officers saw computer wires, cables, and peripheral equipment that indicated that a computer customarily sat on that desk. Nevertheless, defendant insisted that he did not have another laptop computer, and he specifically invited the agents "to look around."

It is at this point in the narrative that the only real disputed fact arises: defendant testified that he did not invite the officers and O'Hare "to look around," and that he did not consent to a search.

Special Agent O'Hare and the two probation officers were extremely credible

witnesses, and they are believed without qualification. Defendant was not credible, and his testimony is not believed.

The officers accepted defendant's invitation to search. During that search, they observed a box in the closet that once held a Toshiba laptop computer, and neither of the computers earlier shown to the officers by defendant matched that description.

The officers' search included defendant's garage. In the garage, the officers saw a short (and dark) hallway, one wall of which was also one of the walls to defendant's bedroom. The area above defendant's bedroom ceiling could be reached from this hallway in the garage. As Probation Officer Newland picked his way down this cluttered hallway, he reached up to the exposed area, running his hand along the rafters. He felt something. What he retrieved was the Toshiba laptop computer and two 650 hard drives. A short preview of what the computer contained revealed images of child pornography. Ultimately, a warrant was obtained from this court to thoroughly search the contents of the computer and those hard drives, and this prosecution was the result.

Defendant's motion to suppress should be denied on either of two basis, both equally valid. First, any computer in his possession could be searched as a condition of his probation. The right to search his computers is a meaningless right if his supervising probation officer could not search the house for any computers.

Secondly, defendant not only consented to a search of his home for computers, he affirmatively invited his probation officers to do so. A consent to search is a long-recognized exception to the Fourth Amendment's requirement for a warrant, *Schneckloth v. Bustamonte*,

7

412 U.S. 218 (1973).

It is respectfully recommended the defendant's motion to suppress, Doc. 16, be DENIED.

Respectfully submitted,

    s/ Dennis H. Inman
United States Magistrate Judge