IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:13-CR-090 |
| ) | |
| RAY DWIGHT SLUSS ) | |

**MEMORANDUM AND ORDER**

The defendant is the subject of a four-count child pornography indictment. He has filed a motion to suppress evidence [doc. 16] discovered in an allegedly unlawful search of his computers.

Chief United States Magistrate Judge Dennis H. Inman held an evidentiary hearing on January 14, 2014. The magistrate heard testimony from state probation officers Michael Newland and LeAnn Crumley, FBI Special Agent Peter O'Hare, and the defendant. Several documents were introduced into evidence [doc. 22].

Now before the court is the magistrate judge's January 16, 2014 report and recommendation ("R&R") [doc. 25], recommending that the defendant's motion be denied. The defendant objects [doc. 27] to the R&R.

The court has reviewed the transcript of the motion hearing [doc. 31]. In addition, the court listened to the entire hearing as it took place and is therefore in an even greater position to assess the content and credibility of all testimony.

Although the defendant requests oral argument on his objections, the court finds further argument unnecessary. For the reasons that follow, the defendant's objections will be overruled and his motion will be denied.

I.

*Standard of Review*

A district court is both statutorily and constitutionally required to conduct a *de novo* review of a magistrate judge's report and recommendation. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). The district court need not provide *de novo* review where objections to a report and recommendation are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

II.

*Relevant Background*

The pertinent facts are accurately set forth by the magistrate judge in his R&R and need not be restated herein. Further, this court echoes the magistrate judge's observation that "Special Agent O'Hare and the two probation officers were extremely credible witnesses, and they are believed without qualification. Defendant was not credible, and his testimony is not believed." [Doc. 25, p. 6-7].

2

*III.*

*Suppression*

The defendant moves to suppress evidence discovered during the search and seizure of a laptop computer and two external hard drives. The magistrate judge recommends denial of the motion for two reasons. First, the magistrate concluded that "any computer in his possession could be searched as a condition of his probation." [Doc. 25, p.7]. The magistrate further concluded that the defendant "consented to a search of his home for computers." [Doc. 25, p.7]. The defendant objects to these conclusions on several grounds:

> 1. From its commencement, the search was not supported by reasonable suspicion.
>
> 2. Washington County Sheriff's Captain Larry Denney's recollection of having seen two laptops in the defendant's bedroom two years prior is a "stale tip" insufficient to establish reasonable suspicion.
>
> 3. The defendant's statement that officers could "look around" for additional computers did not establish reasonable suspicion because the search was already well underway by that point.
>
> 4. Even if defendant's conditions of probation authorized a warrantless search of his computers, the actual search exceeded the scope of the consent.

The defendant correctly points out that, in addition to the supervision condition authorizing searches of his computer, any such search must be supported by reasonable suspicion. *See, e.g., United States v. Herndon*, 501 F.3d 683 (6th Cir. 2007). In *Herndon*, the defendant was under Tennessee state supervision following convictions for sexual

exploitation of a minor. *See id.* at 684. Similar to the present case, Herndon had signed an order and a Sex Offender Directives acknowledging that his probation officer could check his computer and software "at any time" for internet activity. *See id.* at 685. Despite that order and consent, the Sixth Circuit concluded that searches of Herndon's computer were required to be supported by reasonable suspicion. *See id.* at 691 (citing *United States v. Knights*, 534 U.S. 112, 119-21 (2001)); *see also United States v. Henry*, 429 F.3d 603, 614 (6th Cir. 2005) ("The Supreme Court has explicitly declined to address whether a probationer consents to suspicionless searches by agreeing to a search condition.") (citing *Knights*, 534 U.S. at 118, 120 n.6).

"[C]ourts making reasonable suspicion determinations [should] consider 'the totality of the circumstances of each case to see whether the . . . officer has a particularized and objective basis for suspecting a legal wrongdoing.'" *Herndon*, 501 F.3d at 691 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "Reasonable suspicion" is a lesser standard than probable cause, and a "considerably" lower standard than preponderance of the evidence. *Id.* (quoting *Arvizu*, 534 U.S. at 274)). To illustrate, a condition of supervision in *Herndon* forbade unapproved internet access. *Id.* at 685. Herndon mentioned to his probation officer that he was using the internet to search for employment. *Id.* at 691. The Sixth Circuit concluded that this information gave the probation officer reasonable suspicion to inspect Herndon's computer. *Id.* at 692.

4

The computer search in this case was supported by reasonable suspicion as well. Based on an interview with the defendant and information confirmed by other FBI personnel, Agent O'Hare suspected that the defendant was lying to him regarding the purchase and possession of a polygraph countermeasures manual. The defendant insisted he never bought that book, yet the FBI's investigation showed a credit card purchase of the manual delivered to the defendant at his home address. Agent O'Hare suspected that the defendant was lying either because he was in possession of child pornography or because he feared he would be in trouble for using the book (even though Agent O'Hare had made clear to the defendant that he was not under criminal investigation).

Agent O'Hare then shared his concerns with the defendant's probation officer, Michael Newland. Officer Newland testified that polygraphs were an important component of the defendant's prior *supervised* probation "to detect any deception that he may be trying to hide."[1] After meeting with Agent O'Hare, Officer Newland decided to accompany the agent to the defendant's residence "to search his computers." [Doc. 31, p.21]. In the court's view, the following testimony by Officer Newland best explains the reasonable suspicion underlying his search:

> Q: . . . [T]ell the Judge why it's relevant to you that a probationer who has been convicted of a child porn offense who took and passed at least three polygraph exams, why would it be relevant that he has bought some sort of polygraph counter measure program?

---

[1] The defendant's earliest polygraph indicated deception. At the time of the search in this case, following his successful passing of three subsequent polygraphs, the defendant was on *unsupervised* probation and no longer subject to a polygraph requirement.

5

> A: Well, obviously my responsibilities – first responsibility is safety of the community; and if Mr. Sluss is deceiving polygraphs, then that's an indicator he's doing something illegal because those polygraphs don't ask you innocent questions, they're tough questions; and if he's lying about that, then it's something very illegal, very wrong and affects the community, and it's my job to protect that.

[Doc. 31, p. 30]. *See Herndon*, 501 F.3d at 691 ("[T]he Supreme Court has 'repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.'") (citing and quoting *Samson v. Cal.*, 547 U.S. 843, 853 (2006)).

The court notes that a small portion of Officer Newland's cross-examination testimony, *if read in isolation*, could suggest that the officer lacked reasonable suspicion. [Doc. 31, p.37-38]. However, this small and isolated segment of the officer's testimony does not override the remaining facts, viewed in their totality, which comprise reasonable suspicion in this case. Officer Newland had reliable information that the defendant - previously convicted of multiple counts of sexual exploitation of a minor - had not only purchased a polygraph deception manual but was also now "adamantly" attempting to conceal that purchase. Officer Newland and Agent O'Hare shared the suspicion that this denial could be related to a present intent to conceal child pornography. *See United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994) (citation omitted) (Law enforcement agents and probation officers "can work together and share information to achieve their objectives."). Having considered the circumstances in their totality, this court concludes that the officers'

6

search of the defendant's computers was justified by reasonable suspicion. Contrary to the defendant's assertion, this suspicion was based on a combination of facts and not solely on the defendant's criminal record.[2]

Turning to the remaining objections, to the extent that the search was furthered by officers' knowledge (originating with Captain Denny) that the defendant possessed an additional laptop two years prior, that information is not a "stale tip." <u>On the day of the search</u>, officers viewed a void on a desktop where a computer appeared to have been. More importantly, the search did not escalate because an officer had seen a computer two years before. The search escalated because the defendant adamantly denied *that day* that he had *ever* possessed the additional computer. The defendant's statements that day were what caused the officers to press forward, and those statements could not have been less stale.

The defendant next objects that his later consent for the officers to "look around" was of no import because the search, lacking in reasonable suspicion, was already underway. This objection goes nowhere, as the court has already found that the search was supported by reasonable suspicion from its inception.

Lastly, the court disagrees with the defendant's objection that the search exceeded its permissible scope. The probation officers were entitled to search the defendant's computers, and they did nothing more. While the testimony of Officer Crumley

---

[2] The defendant suggests that any polygraph deception could have been designed to conceal *lawful* sexual activity. The defendant offers, however, no explanation why he would employ such drastic measures to hide legal conduct. Regardless, the defense hypothesis in no way dims the reasonableness of the officers' concerns regarding the potential possession of child pornography.

7

and Agent O'Hare occasionally references the search as being of "the residence" rather than of computers, Officer Newland's testimony makes clear that the search (and the intent to search) was in fact limited to computers. There is no proof or suggestion, for example, that officers searched the residence for either the polygraph countermeasures manual or *printed* child pornography. While officers did eventually search the residence *for the missing computer*, they did so at the defendant's invitation.

*IV.*

*Conclusion*

For the reasons provided by the magistrate judge, and for the additional reasoning stated herein, it is **ORDERED** that the defendant's motion to suppress [doc. 16] is **DENIED**. His objections [doc. 27] are **OVERRULED**.

This case remains set for trial on February 4, 2014.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge